### NEWTON *v.* NEWTON.

1. DIVORCE—DECREE—FILING NUNC PRO TUNC.

Upon a petition and proofs showing that complainant filed a bill for divorce 15 years previously against her husband, obtained substituted service, brought on the cause for hearing, and that the trial court directed her solicitor to prepare a decree, which the judge subsequently signed, but which became lost or destroyed without having been filed in the cause, the administrator of the defendant's second wife whom defendant afterwards married in California, was, after his death, entitled to an order entering the decree *nunc pro tunc.*

2. SAME—JUDGMENT—LACHES.

The delay in asking for relief being excused by the probability that the parties remained in ignorance of the defect, since they would not be expected to know of it, is not a bar to relief.

OSTRANDER, C. J., and BROOKE and BLAIR, JJ., dissenting.

Appeal from Muskegon; Davis, J., presiding. Submitted February 10, 1911. ( Docket No. 153.) Decided July 5, 1911.

Bill by Evaline Newton against Lyman Newton for

divorce. A number of years having elapsed subsequent to the hearing, one O. H. Lent, administrator of the estate of Nellie Newton, deceased, filed a petition to have a decree entered in said cause in accordance with the opinion and direction of the trial judge at the hearing. From an order denying the relief prayed, petitioner appeals. Reversed.

*Edward Waer*, for appellant.

*Charles B. Cross*, for appellee.

BIRD, J. The petition alleges that a decree of divorce was granted complainant in this cause in 1894; that the same was prepared and signed by the court, but by the neglect of some one it was neither filed nor entered, and he prays that it may now be filed and entered on the records of the court as of the date when it was rendered. The Chief Justice finds from the records and oral testimony that a decree was granted, prepared, and signed, and that the marriage was dissolved, as alleged by petitioner, but denies to him a *nunc pro tunc* order to complete the record. I concur with his finding that such a decree was granted, prepared, and signed, and that the marriage was dissolved; but I disapprove of his refusal to grant the relief prayed. If a decree was actually granted, prepared, and signed, but by the neglect of some one it was never filed or entered on the records, and we are convinced of these facts, as we are, I think the petitioner is entitled to the relief which litigants usually get when they prove their case.

It is safe to assume that the parties did not know of the defect in the record. They would not be supposed to know of it. Such matters are usually attended to by counsel and other officers of the court. It required some such occasion as the present one to bring the defect to the light.

It is said that defendant had no opportunity to ask for a rehearing or a review of the proceeding. If defendant

had desired a review of the proceeding and had taken steps to that end, the defect would have been discovered and corrected many years before this petition was filed, and from the fact that 15 years have elapsed without any such attempt being made, upon his part, we may safely conclude that he did not desire a review of the proceedings.

The order of the trial court is reversed, and an order will be entered therein agreeable to the prayer of the petition.

HOOKER, MOORE, McALVAY, and STONE, JJ., concurred with BIRD, J.

The complainant filed her bill against the defendant December 5, 1894, for a decree of absolute divorce on the ground of nonsupport. There was no personal service of process, but, upon an affidavit of nonresidence being filed, an order for the appearance of defendant was made and published. The bill was taken as confessed by the defendant June 17, 1895. The cause came on for hearing on June 21, 1895, and proofs were taken. No decree was ever filed or entered. The last entry on the chancery calendar in this cause, in the year 1895, is under date June 17th, when an affidavit of regularity was filed. The next entry in order is July 22, 1907, "Order dismissing suit filed." The next entry, March 22, 1909, "Copy of marriage certificate filed," and, on the same date, "Order permitting removal of marriage certificate from the files filed and entered." The paper writing upon which the entry of July 22, 1907, is based is entitled in the cause, and is as follows:

"In this cause, on motion of Evaline Newton, the above complainant, it is ordered that the said cause be and the same is hereby dismissed. Evaline Newton, complainant."

On the 2d day of November, 1909, one O. H. Lent, of Riverside, Cal., filed a petition in said court and cause, setting up, upon information and belief, that after the

proofs were taken in the divorce suit a decree of divorce was granted by the court to the complainant, and that such a decree was prepared and signed by the judge, but that the decree was never filed, is lost, and cannot be found; that after the decree was granted, the defendant who was a resident of the State of California, and had learned of the decree, married, on October 21, 1908, Nellie R. Cunningham, and, on January 9, 1909, died, the said Nellie surviving him; that on June 26, 1909, the said Nellie Cunningham Newton died in the State of California, and petitioner was appointed administrator of her estate; that as widow of Lyman Newton said Nellie was entitled to property of which Lyman Newton died seised, and that petitioner, as administrator of her estate, is entitled to it. The prayer of the petition is that an order be made for signing, filing, and entering a decree of divorce in the cause, to bear date prior to October 21, 1908, to take the place of the former decree.

This petition was answered by Evaline Newton, who denies that a decree of divorce was granted or signed, or that the court did anything more than to take the case under advisement. She admits that she caused the order, signed by herself, dismissing the said cause, to be entered; admits that Lyman Newton went through the form of a marriage ceremony in the State of California with Nellie R. Cunningham, but says that it was secretly performed, and that the said Lyman Newton knew that he was still the lawful husband of complainant. Further answering, she says that she is the widow of said Lyman Newton, entitled to, and that she has claimed an interest in, his property, and has been recognized as such widow by the courts of California, and is now acting as administratrix of Lyman Newton's estate. She further avers that subsequent to the taking of proofs in the original cause a reconciliation was effected between herself and her husband, who thereafter resumed marital relations, and at different intervals lived together as husband and wife.

Proofs were taken in open court. On the part of the

respondent, Evaline Newton, the proofs tended to show that she never knew of any decree having been granted; never saw a decree; that she cohabited with Lyman Newton after July 22, 1907, and that in September, 1906, there was pending in the superior court, in the county of Los Angeles, State of California, a suit instituted by Lyman Newton, as plaintiff, against Evaline Newton, as defendant, the complaint in which set out that plaintiff and defendant intermarried on or about the 13th day of March, 1868, "and ever since have been and now are husband and wife," and further alleging that on or about the 25th of August, 1890, the defendant deserted and abandoned the plaintiff without cause, and against his will and without his consent. The prayer of the complaint is that the bonds of matrimony between plaintiff and defendant be dissolved.

The testimony relied upon by the petitioner, aside from the files and records in the cause, is the following: An entry on the printed calendar of the circuit court for the county of Muskegon, for the May term, 1895, kept by Judge Russell and in his handwriting, reading: "Evaline Newton v. Lyman Newton. Divorce. P. W. Kniskern. Decree;" the minutes of the stenographer on file with the clerk of the court, read by his successor, which show that upon the hearing of the divorce case three witnesses were examined (two besides the complainant), and at the conclusion of the testimony the entry, "You may prepare a decree;" the testimony of Mr. Kniskern, who was one of the solicitors for complainant, who examined the witnesses at the hearing, who testified that a decree was prepared and signed by the court, and that afterwards he had the decree in his office and cannot tell the reason for not filing it; that it was in his table drawer for a long time; that his client soon after the hearing went to Chicago; that he had a number of talks with her about the decree, and as to what had become of it. In this respect the testimony of Evaline Newton contradicts that of Mr. Kniskern, as does also that of her daughter. The question is whether

the court below, upon this record, should have made and entered a decree as of a date prior to the 21st of October, 1908, which was the date when it is claimed said Lyman Newton married Nellie Cunningham, in the State of California.

OSTRANDER, C. J. (*after stating the facts*). The statute (1 Comp. Laws, § 557) provides that any decree of a circuit court, in chancery, "that may have been duly passed and signed, * * * and which may have failed to be recorded or enrolled, may be directed by the court, * * * in its discretion, to be recorded and enrolled by the register of the court, *nunc pro tunc;* and when so recorded and enrolled the same shall be as effectual as if recorded and enrolled at the end of thirty days after its allowance."

The statute (3 Comp. Laws, §§ 10276–10280) is "An act to provide for the restoration of lost records, papers, or other proceedings in courts of record." The petition does not distinctly show that a statute is relied upon, and in the brief for petitioner and appellant, referring to the statute last mentioned, doubt is expressed whether it is applicable. The point is probably immaterial, since the statutes appear to provide for doing nothing which courts of record have not inherent power to do. See *Drake* v. *Kinsell*, 38 Mich. 232, 235. Both statutes expressly give to the courts discretion to restore or not to restore lost records. The exercise of discretion is involved in the exercise of the inherent power possessed by the courts.

The interest of the petitioner in fact is admitted, namely, that the ceremony of a marriage between Lyman Newton and Nellie R. Cunningham was performed in California; that Lyman Newton died in California January 9, 1909; that said Nellie died in California June 26, 1909; and that petitioner is administrator of her estate. Inferentially, at least, it is admitted that the widow of a deceased person has, in California, some rights in the deceased husband's estate. We regard this as a sufficient

showing of the right of petitioner to inquire about and to establish, if he can, the status of Lyman Newton, as a married or an unmarried man, at the time he contracted marriage with petitioner's decedent.

For all purposes of enforcement or of appeal, a decree of a court of chancery must at least come to the hands of the register of the court. *Sellers* v. *Botsford*, 9 Mich. 490; *Newbould* v. *Stewart*, 15 Mich. 155; *Wolverine Land Co.* v. *Davis*, 141 Mich. 187 (104 N. W. 648). A decree of divorce, which evidences no more than that a marriage is annulled, contains no provision for alimony, and imposes no obligation upon either party litigant, is not a decree which may be enforced, within the usual meaning of the term. It fixes the status of the parties; frees them from all obligations to each other; dissolves the relations theretofore existing between them growing out of the contract and ceremony of marriage. For the purposes of an appeal, the time would run from the entry of such a decree. So, undoubtedly, in ordinary cases the time within which, under the provisions of 1 Comp. Laws, §§ 496, 497, a defendant proceeded against as a nonresident may appear and be permitted to defend, after decree, would run from the date of filing and entry of the decree, unless notified in writing that the decree had passed. See *Coffin* v. *Ontonagon Circuit Judge*, 140 Mich. 420 (103 N. W. 835). This statute, however, expressly excepts decrees for divorce, and such decrees, and the proceedings in which they are entered, are in many respects exceptional, when compared with proceedings within the ordinary jurisdiction of courts of equity.

We are satisfied that in the divorce suit the court, upon a hearing, announced a conclusion in favor of complainant and later signed a decree of divorce. We are satisfied that the decree, which should have been at once handed to the register of the court, was handed to, and remained for some time in the possession of, complainant's solicitor and has been lost. We may assume, we think, that the decree followed the bill of complaint and did no

more than dissolve the marriage. The judgment of the court had then, and not until then, been pronounced; the status of the parties had been determined. It would be intolerable if, after such determination, a party, or the solicitor of a party, could vacate or assert the judgment by filing or refusing to file the decree with the register of the court; could then determine, at pleasure or by inadvertence, whether the parties were or were not husband and wife. In the absence of a statute rule, we must hold that the marriage was dissolved when the decree was signed.

This conclusion does not necessarily dispose of the matter in appellant's favor. Fifteen years elapsed between the making of the decree and the application to restore it. During that period neither party to the divorce proceeding —and it appears that the husband had knowledge that it was instituted—have been in a position to show, by the record of a court, that their relations were other than those of husband and wife; relations which, it is admitted, originally existed. The husband had no opportunity to appeal from the decree or to ask for a rehearing or review of the proceeding. Only after his death is it sought to secure record evidence of a changed relation and status. We are disposed to leave the parties, so far as the record of the court is concerned, where they left themselves.

The order of the circuit court, in chancery, for the county of Muskegon, should be affirmed, with costs to appellee.

BROOKE and BLAIR, JJ., concurred with OSTRANDER, C. J.