ENSMAN v ENSMAN

Docket No. 78-404. Submitted June 6, 1978, at Lansing.—Decided
    September 21, 1978.

Thelma R. Ensman filed a complaint for divorce and Lawrence E.
    Ensman filed a cross-complaint. When the divorce came on for
    a hearing, defendant withdrew his pleadings and the property
    settlement between the parties was spelled out in full on the
    record. Defendant was in accord with the agreement stated on
    the record and the cause proceeded *pro confesso*. Thelma
    Ensman died 34 days following the *pro confesso* proceedings
    but before formal entry of a written judgment of divorce. Two
    days later a judgment of divorce, approved as to content and
    form by attorneys for both parties, was entered in Oakland
    Circuit Court, Richard D. Kuhn, J. The trial court denied the
    defendant's motion to set aside the divorce judgment which
    motion was based on the ground that a divorce and property
    settlement do not become effective until it is signed by the
    parties and entered by the court. The defendant appeals. *Held:*

    A judgment of divorce is not effective, as a general rule, and
    the parties remain married, until the judgment is reduced to
    writing and signed by the parties; however, an exception exists
    to this general rule and a divorce judgment will be upheld on
    the basis of a judge's oral statement that a *pro confesso* divorce
    is or will be granted where death occurs to one of the parties
    before entry of a formal written judgment where the parties
    during the interval before death, in good faith, acted on the
    assumption that the divorce had been granted. Approval of the
    divorce judgment, knowing that his wife was terminally ill with
    cancer, and the acceptance by defendant of cash benefits there-
    under estops defendant from appealing the existence or en-
    forcement of the judgment.

    Affirmed.

1. Divorce—Judgment—Pro Confesso—Judge's Oral Statement—
    Substantial Reliance—Proof.

    A judge's oral statement that a *pro confesso* divorce is or will be

References for Points in Headnotes

[1] 24 Am Jur 2d, Divorce and Separation §§ 419, 425, 435.
[2] 24 Am Jur 2d, Divorce and Separation § 490.

granted, followed by the death of one of the parties before formal entry of the judgment, is sufficient to uphold the divorce judgment where the parties, during the interval before death, in good faith, acted on the assumption that the divorce had been granted; meaningful proof of conduct indicating the parties themselves believed they were divorced is required, and where there is evidence of substantial reliance upon the judge's oral statement the subsequently entered judgment of divorce should be upheld.

2. JUDGMENT—ACCEPTANCE OF BENEFITS—ESTOPPEL.

Approval of a judgment and acceptance of benefits thereunder estops a party from appeal; therefore, a husband, knowing that his wife was terminally ill with cancer, cannot accept major cash benefits under a divorce judgment which he has approved and then drag his feet or otherwise postpone, until her death, a final settlement and division of the more substantial property interests ordered in the consent judgment and should not be allowed to set aside the judgment which has been read into the record, but formally entered after the wife's death.

*Merritt, Kwetcher & Burnard,* for plaintiff.

*Christi & Herman,* for defendant.

Before: ALLEN, P.J., and CYNAR and D.R. FREEMAN,* JJ.

PER CURIAM. With some significant differences, hereinafter noted, this appeal comes to us on basically the same facts as appear in *Saunders v Smith,* released concurrently with this opinion.[1] Plaintiff wife died 34 days after obtaining a *pro confesso* divorce but before formal entry of a written judgment of divorce. Two days later a judgment of divorce, approved as to content and form by attorneys for both parties, was entered by the court. On July 13, 1977, the trial court denied a motion to set aside the judgment, and defendant appeals of right.

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] *Saunders v Smith,* 86 Mich App 1; 272 NW2d 174 (1978).

The parties hereto were married July 6, 1967, and separated about nine years later on May 10, 1976. During the marriage one child was born. On June 2, 1976, the wife filed a complaint for divorce, and defendant answered and filed a cross-complaint. Interrogatories disclose that the husband owned a 50% interest in a hardware business where he was employed, and also owned as a tenant by the entirety with his wife, a 50% interest in a parcel of land near Cheboygan. This interest in land was valued at about $8,000. Additionally, the parties had a joint bank account of $5,326.61 and jointly owned stocks approximating $9,000 market value.[2] The home in which the parties lived was owned by the plaintiff prior to the marriage and upon plaintiff's death passed by will to her named devisees.

On June 13, 1976, the divorce came on for hearing with both parties present, together with their respective attorneys. As in *Saunders, supra,* defendant withdrew his pleadings, and the property settlement agreement was spelled out in full on the record. Defendant personally stated he was in accord with the agreement stated on the record, and the cause then proceeded *pro confesso.* At the conclusion of the wife's testimony the following occurred:

"THE COURT: The Court is satisfied with the proofs, the Court will grant the Plaintiff a judgment—absolute judgment of divorce, grant custody of the minor child to the plaintiff-mother, support in the amount of fifty dollars ($50) a week, plus all medical, dental and hospital expenses.

"The Court will approve of the property settlement as

[2] Stock ownership consisted of 200 shares Ampex Corporation; 320 shares Detroit Edison; 50 shares Rockwell International; 200 shares Peppy/Biffs, Inc.

placed on the record and agreed upon, and the Court will approve of the alimony in the amount of fifty dollars ($50) per week, plus the defendant will pay the Blue Cross and Blue Shield premiums.

"All the Statutory dower clauses shall be made part of the record and made part of the judgment."

Thelma Ensman died from cancer on July 17,— just 34 days following the *pro confesso* proceedings. Sometime between June 13 and July 17, a proposed judgment of divorce had been drafted by plaintiff's counsel and signed by plaintiff and also approved "as to form and substance" by the signature of counsel for both parties. Defendant had not signed. On July 18, defendant's counsel telephoned plaintiff's counsel that plaintiff had died the prior day. However, both counsel agreed that under the circumstances the husband's signature was not required and that judgment should be entered immediately. Judgment bearing counsel and plaintiff's signature was entered by the court July 19. The property settlement provisions thereof conform precisely with the agreement stated on the record on June 13. Under its terms, the wife was awarded the home and the husband was awarded the hardware business. All liquid assets including the bank account, stocks and a retirement account were to be divided equally between the parties. The Cheboygan property in which the parties previously held a 50% interest as tenants by the entireties was to be held in tenancy in common, *viz.*—each party to hold one-quarter.

One day after plaintiff's death the Supreme Court decided *Tiedman v Tiedman,* 400 Mich 571; 255 NW2d 632 (1977), a case upon which the husband now strongly relies to nullify the judgment of divorce. Plaintiff claims that *Tiedman* announced a new rule of law and therefore should

be applied prospectively only.[3] We disagree. The *Tiedman* Court was not announcing a new rule of law but merely restating some well-established principles and correcting what it found to be an erroneous approach taken by this Court in *Le-Tarte v LeTarte,* 32 Mich App 289; 188 NW2d 673 (1971), *lv den,* 385 Mich 761 (1971).

In *Saunders, supra,* we held the statements made by the trial court at the conclusion of the *pro confesso* testimony of the wife clearly and unambiguously expressed the intent to make the judgment effective immediately. We do not find this to be true in the instant case. Here, unlike *Saunders,* the court's verbal rendition of judgment was couched in terms *in futuro.* The trial court's verbiage was singularly no different than the language found in *Tiedman* to be insufficient to permit entry of judgment *nunc pro tunc.* In fact, the instant case is even less favorable to the deceased's position than *Tiedman* since, here, the trial court, upon granting defendant's motion to withdraw answer and countercomplaint stated: "Be sure *to get* a stipulation and order in". Patently, the facts in the present case do not fall within the *Tiedman* exception upon which this Court relied in *Saunders* to affirm a judgment of divorce entered subsequent to the wife's death.

However, in footnote 1, the *Tiedman* Court set forth at some length a second exception to the general rule that divorce might not be granted after a party's death:

"Whether parties who in good faith have acted on the strength of a judge's oral statement that a divorce is or

---

[3] Counsel argued that prior to *Tiedman,* the law was that the death of one of the parties after rendition of judgment, but before entry of judgment, would not affect the validity of a subsequently entered judgment.

will be granted should be deemed to be divorced is a question different from the one here presented where the terms of the agreed-upon property settlement were not consummated or other action taken in the good faith belief that a divorce had been granted. See Clark on Domestic Relations, § 11.3, pp 289–299."

We believe the reliance exception controls the present case. During the 34-day interval the parties, in good faith, acted on the assumption that a divorce had been granted. The bank account was closed out and each party received approximately $2,700. This was in conformity with the property settlement provision that liquid assets were to be divided equally. The husband moved out of the basement of the home which was awarded to the wife, and commenced paying alimony at the new rates set forth at the *pro confesso* hearing.

The degree of reliance required to come within the footnoted exception is not addressed in *Tiedman,* probably because, there, the husband unexpectedly died in a fire six days after the *pro confesso* proceedings and there was little opportunity to demonstrate reliance. However, in our opinion the amount of reliance required should be substantial. Meaningful proof of conduct indicating the parties themselves in good faith believed they were divorced is required. Here, the conduct of both the husband and wife meets that standard. Their actions of reliance were neither minor nor unsubstantial. Things which the parties could do on their own, such as closing out the bank account, moving away from the house and making and accepting alimony and child support payments in conformity with the settlement agreement, were done. Left undone were things which required assistance from counsel such as converting an

entirety tenancy to a tenancy in common and contacting stock transfer agents for the transfer of the stocks held by the parties.

Not only did the defendant-husband accept benefits under the judgment which he now attacks but, in addition, his counsel approved the proposed judgment knowing that the plaintiff wife had died. *Westgate v Adams,* 293 Mich 559; 292 NW 491 (1940), is cited for the rule that approval of a decree and acceptance of some benefits thereunder estops a party from appeal. *Cf. Norton Shores v Carr,* 59 Mich App 561; 229 NW2d 848 (1975). In *Bohn v Bohn,* 26 Mich App 270, 273; 182 NW2d 107 (1970), plaintiff wife attacked a court order which awarded custody of the minor child to defendant husband. The order was approved as to both substance and form by the wife's attorney. This Court held:

"Further, plaintiff consented to the March 12 custody order both as to form and substance, and cannot now complain. *Trupski v Kanar,* 366 Mich 603 [115 NW2d 408] (1962), *Chilton's, Inc v Wilmington Apartment Co,* 365 Mich 242 [112 NW2d 434] (1961)."

At the time of the *pro confesso* hearing, the defendant knew full well that his wife was terminally ill with cancer. Knowing this, he cannot accept major cash benefits under the judgment and then, for more than a month, drag his feet or otherwise postpone until her death a final settlement and division of the more substantial property interests ordered in the consent judgment.

Affirmed, costs to plaintiff.

CYNAR, J., concurs in result only.