VIOGLAVICH v VIOGLAVICH

Docket No. 54198. Submitted November 13, 1981, at Detroit.—Decided February 18, 1982.

The marriage of Gertrude Vioglavich and Peter Vioglavich was dissolved by a judgment of divorce in Wayne Circuit Court. Subsequent to the final hearing in the divorce action but prior to the judge's signing the final judgment of divorce, Gertrude Vioglavich married William Wilkinson. Subsequently, William Wilkinson died. Thereupon, Jo Pierce, daughter of Wilkinson, petitioned the probate court for appointment as temporary personal representative of the intestate estate of Wilkinson, listing as heirs at law only the children of the deceased. Gertrude Vioglavich Wilkinson was not listed as an heir. Subsequently, Gertrude Vioglavich Wilkinson filed a motion in Wayne Circuit Court to amend the judgment of divorce *nunc pro tunc* and filed objections to the appointment of Pierce as personal representative in the probate court, alleging that she is the widow of the deceased, William Wilkinson. Jo Pierce was subsequently allowed to intervene in the circuit court action. The Wayne Circuit Court, George T. Martin, J., entered an order denying the plaintiff's motion for an order *nunc pro tunc.* The plaintiff appeals by leave granted. *Held:*

Based upon the facts, the equities, and the public policy encouraging the preservation and sanctity of the marriage relationship, the trial court abused its discretion in denying the plaintiff's motion for a judgment *nunc pro tunc.* The trial court did not abuse its discretion in permitting the personal representative of Wilkinson's estate to intervene in the action.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur 2d, Marriage §§ 67-77.

[2, 3] 24 Am Jur 2d, Divorce and Separation § 422.

Entering judgment or decree of divorce nunc pro tunc. 19 ALR3d 648.

[4] 59 Am Jur 2d, Parties § 143 *et seq.*

When is representation of applicant's interest by existing parties inadequate and applicant bound by judgment so as to be entitled to intervention as of right under Federal Rule 24[a][2] and similar state statutes or rules. 84 ALR2d 1412.

1. HUSBAND AND WIFE — MARRIAGES.

Generally, a second marriage entered into while a party is married to another person is invalid and the subsequent termination of the earlier marriage does not validate the second marriage.

2. DIVORCE — JUDGMENTS NUNC PRO TUNC.

The Court of Appeals should demonstrate flexibility and a desire to achieve a fair result under the circumstances in deciding a case where a party relied on the belief that a valid order of divorce had been entered and had remarried, later seeking a judgment *nunc pro tunc* so that the divorce might be held effective prior to the date of the remarriage.

3. JUDGMENTS — JUDGMENTS NUNC PRO TUNC.

Generally, the power to enter a judgment *nunc pro tunc* is in the court's discretion.

4. PARTIES — INTERVENTION — COURT RULES.

A party should be permitted to intervene upon timely application in an action where the existing parties to the action inadequately represent the applicant's interest and the applicant may be bound by a judgment in the action or where the applicant is so situated as to be adversely affected by the disposition of property which is subject to the control of the court (GCR 1963, 209).

*Charles E. Raymond;* and *Gromek, Bendure & Thomas* (by *Nancy L. Bosh),* of counsel, for plaintiff.

*Fitzgerald, Young, Peters, Dakmak & Bruno,* for Jo Pierce.

Before: M. F. CAVANAGH, P.J., and ALLEN and MACKENZIE, JJ.

M. F. CAVANAGH, P.J. This case comes before this Court by grant of plaintiff's delayed application for leave to appeal from the circuit court's denial of plaintiff's motion for an order *nunc pro tunc* of a judgment of divorce dated June 22, 1976.

On May 14, 1976, a final hearing was held on plaintiff's complaint for divorce in Wayne County

Circuit Court. After taking testimony and hearing the arguments of counsel, the court made a complete disposition of the property of the parties, ordered custody of the minor children to the defendant, and concluded:

"And the court is satisfied from the testimony that there has been a breakdown in the marriage relationship in this marriage to the extent that the objects of matrimony have been destroyed.

"Actually, you don't award a judgment to either party under no-fault. The clause will be that it is ordered that this marriage be dissolved. There's really no finding of fault. The finding is that there has been a breakdown in the marriage relationship in this marriage to the extent the objects of the matrimony have been destroyed, and the court will therefore order that the marriage be dissolved."

The written judgment of divorce was not signed by the court until June 22, 1976.

On May 18, 1976, plaintiff and William Wilkinson applied for a marriage license. The license was duly issued on May 21, 1976, and plaintiff and Mr. Wilkinson married the same day. Plaintiff and Mr. Wilkinson cohabitated until Mr. Wilkinson's death on July 26, 1980.

On August 4, 1980, Jo Pierce, daughter of the deceased, William Wilkinson, petitioned the Wayne County Probate Court for her appointment as temporary personal representative of the intestate estate of William K. Wilkinson, listing as heirs at law only the children of the deceased. Plaintiff was not listed as an heir. Letters of authority were granted to Pierce by the probate court on the same day.

On or about August 18, 1980, plaintiff filed a motion to amend the judgment of divorce *nunc pro*

*tunc* in the instant action in the Wayne County Circuit Court. On August 20, 1980, plaintiff filed objections to the appointment of personal representative in the probate court, alleging that she is the widow of the deceased William K. Wilkinson.

On August 20, 1980, Jo Pierce, as temporary personal representative of the estate of William K. Wilkinson, filed a motion to intervene in the instant action. The motion to intervene was granted on September 23, 1980. Jo Pierce thereafter filed briefs in opposition to plaintiff's motion to amend judgment of divorce *nunc pro tunc.* Following a hearing, the Wayne County Circuit Court entered its order denying plaintiff's motion for order *nunc pro tunc* of judgment of divorce dated June 22, 1976.

Plaintiff alleges that it was an abuse of the trial court's discretion to deny the plaintiff's motion to amend the judgment of divorce *nunc pro tunc* and inferentially to allow the temporary personal representative of the intestate estate of William K. Wilkinson, Jo Pierce, to intervene in the instant action. Plaintiff argues that she proceeded in good-faith reliance upon the circuit court's oral pronouncement of divorce and that she was not aware that her divorce from the defendant was not effective at the time the court announced its decision from the bench and so was not aware that at the time she married Mr. Wilkinson she was not lawfully divorced. Plaintiff draws this Court's attention to the case of *Tiedman v Tiedman,* 400 Mich 571; 255 NW2d 632 (1977), wherein the plaintiff commenced a divorce action against her husband and both parties appeared in court October 22, 1974, at which time the lawyer stated the terms of the property settlement, the complainant testified briefly and the judge said:

"I am satisfied in this matter that the statutory grounds have been made out, there is the requisite breakdown in the marriage relationship and no reasonable likelihood of a preservation of the marriage. I'll approve the *property settlement as stated and upon presentation I* will sign the judgment of divorce." 400 Mich 573.

Six days later, the husband died in a fire. The wife moved for dismissal on the grounds that she was a widow. The trial court denied the motion and entered a judgment of divorce *nunc pro tunc* effective October 22, 1974, the date of the hearing. The trial court reasoned that the pronouncement of the court on that date constituted the rendition of a judgment and further acts were ministerial in nature. This Court affirmed.

The Supreme Court disagreed and stated:

"After a judge's oral pronouncement that he will sign a judgment of divorce a dispute might arise regarding the meaning of the words used by the lawyers in stating the terms of a property settlement, or the parties might reconcile or, for other reasons, by mutual agreement abandon the action for divorce and resume the marriage relationship. They would not be divorced simply because the judge had said a divorce is or will be granted or that he would sign a judgment of divorce.

"The rule is well established that courts speak through their judgments and decrees, not their oral statements or written opinions. Generally, a judgment or order is reduced to written form, as was contemplated in this case; until reduced to writing and signed, the judgment did not become effective and the parties remained married.

"A court is without jurisdiction to render a judgment of divorce after the death of one of the parties. 'There must be living parties, or there can be no relationship to be divorced.' *Wilson v Wilson,* 73 Mich 620, 621; 41 NW 817 (1889)." (Footnote omitted.) 400 Mich 575-576.

The Court appears to have left room for two exceptions to the general rule enunciated in *Tiedman*. In a footnote, relied upon by the plaintiff in this case, the Court said:

"We appreciate that the parties may, after such an oral statement, continue to live apart, effectuate the terms of a property settlement and purport to enter into new marriage relationships despite the failure of counsel to obtain a signed judgment of divorce.

"Whether parties who in good faith have *acted* on the strength of a judge's oral statement that a divorce is or will be granted should be deemed to be divorced is a question different from the one here presented where the terms of the agreed-upon property settlement were not consummated or other action taken in the good faith belief that a divorce had been granted. See Clark on Domestic Relations, § 11.3, pp 298-299. See also *Blickle v Kent Probate Judge,* 211 Mich 216; 178 NW 680 (1920); and *Lewis v Wayne County Sheriff,* 335 Mich 640, 642; 56 NW2d 211 (1953), where persons were confined on oral statements without the entry of written orders, and this Court held that the action taken in reliance on the judge's oral statement was lawful." 400 Mich 575-576, fn 1.

At the end of its opinion, the Court said:

"If the judge were to read into the record all the terms of a judgment of divorce, and declare that such statement is to be given immediate effect as a judgment of divorce without further action or signing of a written judgment, such an oral declaration might be as fully effective as a written judgment of divorce." 400 Mich 577.

Both of the *Tiedman* exceptions have been considered by this Court. In *Ensman v Ensman,* 86 Mich App 91; 272 NW2d 176 (1978), the plaintiff's wife died 34 days after obtaining a *pro confesso* divorce but before formal entry of a written judg-

ment of divorce. The proposed judgment of divorce had been drafted by plaintiff's counsel and signed by plaintiff and approved as to form and substance by the signature of counsel for both parties. The defendant had not signed the proposed judgment, but after the death of the wife both counsel agreed that the husband's signature was not necessary under the circumstances and that judgment should be rendered immediately. The judgment was entered two days after the wife's death. The trial court denied the defendant's motion to set aside the judgment.

This Court found that the language used by the trial court did not fall under the second exception set out in *Tiedman, i.e.,* an unambiguous expression of intent to make the judgment effective immediately. Rather, this Court found applicable the "footnote 1" exception, *i.e.,* good-faith reliance on the judge's oral statement. Before the wife's death, the parties closed out and divided a bank account and the husband moved out of the basement of the home which was awarded to the wife and commenced paying alimony. This Court said that substantial reliance was required under *Tiedman,* as well as "[m]eaningful proof of conduct indicating the parties themselves in good faith believed they were divorced". 86 Mich App 96. The conduct of the parties in *Ensman* satisfied this standard. The Court also seems to have considered relevant the fact that the defendant-husband might have purposefully delayed signing the proposed judgment of divorce until his wife's death.

The case of *Saunders v Smith,* 86 Mich App 1; 272 NW2d 174 (1978), *rev'd* 405 Mich 833 (1979), involved the other exception to *Tiedman.* At the divorce hearing, the property settlement was stated in full in the record, the defendant-husband

withdrew his pleadings, and the case proceeded *pro confesso.* Plaintiff's attorney asked the judgment to be given immediate effect, and the defendant had no objections. The wife died 29 days after the court proceedings but before a written judgment of divorce had been entered. The sister and special administrator of the wife moved for a judgment of divorce *nunc pro tunc,* which was granted. This Court held that the case fell under the exception when the judge declares on the record that the oral statement is to be given immediate effect. The Supreme Court disagreed, finding that the record disclosed the judge's oral statement granting a divorce was to be followed by the signing of a judgment.

The *Tiedman, Saunders* and *Ensman* cases differ in two significant ways from the present case. First, these cases involved the death of one of the parties to the divorce. The *Tiedman* Court seemed to have been concerned with the possibility of granting a final judgment of divorce when one of the parties is already dead. In this case, both of the parties to the divorce are still living; it was the wife's second husband who died. Secondly, in *Tiedman, Saunders* and *Ensman,* the death occurred between the hearing and the entering of the final judgment of divorce. In this case, the final judgment of divorce was entered on June 22, 1976; plaintiff's husband died on July 26, 1980. Because the facts of this case do not square with those presented in *Tiedman* and its progeny, this Court is not bound to follow the decisions in those cases. However, the exception created in *Tiedman* for situations where the parties have substantially relied on the judge's oral statement is equally, if not more, significant when both parties to the divorce are still living.

Plaintiff seeks an unconventional use of a judgment *nunc pro tunc.* Such a judgment is usually used where "a divorce decree has actually been made or rendered previously or the successful party is otherwise entitled to such a decree, but entry of the decree has been omitted or delayed through inadvertence or mistake, or the decree has otherwise not been properly entered". 19 ALR3d 648, 652. In this case a judgment of divorce was entered. The plaintiff, however, married one week after the court hearing, relying on the judge's oral statement. Plaintiff's prompt remarriage precludes her from relying on the court's delay in entering the final judgment of divorce. Even if the delay of 38 days might have been too long, it would not have been unreasonable to expect the entry of final judgment to take longer than one week. Furthermore, plaintiff did receive a valid final judgment of divorce; she only wanted to change the effective date of that judgment. Having remarried while she was still married to another person, the general rule is that her second marriage is invalid, and the termination of the earlier marriage does not validate the second marriage. *Stevenson v Detroit,* 42 Mich App 294, 296; 201 NW2d 688 (1972), *lv den* 388 Mich 787 (1972). The retroactive effect of a *nunc pro tunc* entry of judgment will validate the plaintiff's remarriage. 19 ALR3d 648, 678. Thus, although there was no error or prejudicial delay in the entry of the final judgment of divorce, plaintiff seeks to alter the effective date of the divorce decree to validate a marriage entered into in reliance on the judge's oral statement.

Two cases which demonstrate the Court's flexibility and desire to achieve a fair result under the circumstances where a party relied on the belief that a valid order of divorce had been entered and

had remarried, later seeking and ultimately obtaining a judgment *nunc pro tunc* to cause the divorce order to be effective prior to the date of the remarriage, are *Newton v Newton,* 166 Mich 421; 132 NW 91 (1911), and *Albert v Albert,* 284 Mich 387; 279 NW 872 (1938).

A more recent case decided by this Court also demonstrates such a flexibility with respect to marriage, even though it did not involve a judgment *nunc pro tunc.* In *Stevenson v Detroit,* 42 Mich App 294; 201 NW2d 688 (1972), *lv den* 388 Mich 787 (1972), William Stevenson married Ila on November 1, 1967. An action for divorce from his first wife was commenced before his marriage, on July 22, 1967, but was not granted until July 8, 1968. He died on July 16, 1969. The issue on appeal was whether Ila was his widow for purposes of survivor benefits under Detroit's general retirement system. The system preferred widows over named beneficiaries. The Court held:

"We adopt the reasoning of *Dawson v Hatfield Wire & Cable Co, supra* [59 NJ 190; 280 A2d 173 (1971)]. Where the prior marriage is in fact dissolved before the errant spouse's death, in a contest between a beneficiary named by an employee and a woman claiming to be his widow—who married him in good faith unaware that he had a prior undissolved marriage and who lived with him as his wife until his death—the woman who married him is a widow within the meaning of a provision such as the one we here construe. Ila Stevenson is entitled to the survival benefits provided in Detroit's charter in preference to Stevenson's brother.

"Manifestly, the purpose of providing preferential treatment for a widow over a named beneficiary or contingent beneficiary is to provide for those dependent on the deceased employee. Clearly Ila (and her children), not Stevenson's brother, is the person contemplated by that policy. See *Perry v Sun Coal Co, supra*

[183 Tenn 141; 191 SW2d 181 (1945)]." (Footnote omitted.) 42 Mich App 299.

We perceive the administrator of Wilkinson's intestate estate as analogous to the named beneficiary in *Stevenson.* Neither relied upon the deceased's status as an unmarried person; rather, they seek to take advantage of a technical defect in a subsequent marriage of which they were aware. Both the preferential treatment of widows in *Stevenson* and the laws of intestacy in this case are designed to serve some public policy. The widow provision attempts to benefit those who are financially dependent on the deceased; the laws of intestacy are designed to implement what would most likely be the intent of the deceased. In this case, the deceased lived with the plaintiff for four years. It is reasonable to presume that he would have wanted her to share in his estate.

The power to enter a judgment *nunc pro tunc* is generally said to be in the court's discretion. 19 ALR3d 648, 655. See generally *R C Mahon Co v R S Knapp Co,* 277 Mich 103; 268 NW 828 (1936). The transcript of the proceedings on the motion for judgment *nunc pro tunc* does not reveal the basis for the court's denial of that motion. After hearing the arguments of counsel, the court said:

"*The Court:* The court will deny the motion on the basis of Judge DiMaggio. It will be in the future not definitely now and withstanding of the *Tiedman* case and for exception to it. That's the best ruling I can give."

Based upon the facts presented by each of the parties, the equities presented by the circumstances, and the public policy encouraging the preservation and sanctity of the marriage relation-

ship, we find that the trial court did abuse its discretion in denying the plaintiff's motion for a judgment *nunc pro tunc.*

Finally, we find no abuse of discretion in the trial court's permitting the temporary personal representative of the estate of Wilkinson to intervene in the present action. GCR 1963, 209 provides in part:

"1. Intervention of Right. Anyone shall be permitted to intervene in an action * * *

"(3) upon timely application when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant may be bound by a judgment in the action; or

"(4) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or officer thereof."

The record reveals that the original defendant in the divorce proceeding has little interest in opposing the motion for a judgment *nunc pro tunc* and so presumably he has not filed a response or a brief. The representative of the estaste of William Wilkinson will be bound by a judgment in this action because it will determine the validity of the plaintiff's second marriage and her status as an heir. *Newton v Newton, supra,* involved an identical relationship, *i.e.,* the administrator of the estate of the second spouse to a party to the divorce. There, the Supreme Court did not challenge the party's intervention. We find no abuse of discretion in the trial court's grant of the motion to intervene. The trial court's denial of the motion to amend the judgment of divorce *nunc pro tunc* is reversed and the action is remanded for entry of an order granting the motion.

Reversed and remanded.